1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LETICIA GARCIA,                          No.  2:13-cv-1075 AC

12                  Plaintiff,

13        v.                                    ORDER

14    CAROLYN W. COLVIN, Acting
      Commissioner of Social Security,

15
                    Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19    ("Commissioner") denying her application for period of disability and disability insurance

20    benefits ("DIB") under Title II of the Social Security Act and supplemental security income

21    ("SSI") under Title XVI of the Act.  The parties' cross motions for summary judgment are

22    pending.  For the reasons discussed below, the Court will grant in part plaintiff's motion for

23    summary judgment, and will deny defendant's cross-motion for summary judgment.

24                             PROCEDURAL BACKGROUND

25         Plaintiff filed her applications for DIB and SSI on September 4, 2007, alleging disability

26    beginning on June 28, 2007.  Administrative Record ("AR") 15.  Plaintiff's application was

27    denied initially and again upon reconsideration.  AR 232–36, 241–45.  On March 22, 2010, a

28    hearing was held before administrative law judge ("ALJ") Peter F. Belli.  AR 212, 221.  Plaintiff

                                          1

1    appeared with a non-attorney representative at the hearing, at which she and a vocational expert

2    testified.  AR 212.  In a decision dated May 13, 2010, the ALJ found plaintiff not disabled.  AR

3    221.

4           On April 29, 2011, the Social Security Appeals Council granted plaintiff's request for

5    review and remanded his case for reconsideration.  AR 226–30.  The Appeals Council directed

6    the ALJ to: (1) obtain additional evidence concerning the claimant's impairments in order to

7    complete the administrative record in accordance with the regulatory standards regarding

8    consultative examinations and existing medical evidence; (2) give further consideration to the

9    claimant's maximum mental and physical residual functional capacity on a function by function

10   basis during the entire period at issue and provide rationale with specific references to evidence of

11   record in support of assessed limitations; (3) evaluate all lay witness statements pursuant to Social

12   Security Ruling 06-3p and if the opinion is to be discounted, provide rationale germane to the

13   witness; and (4) give further consideration to the requirements of the plaintiff's past relevant

14   work, and if warranted by the expanded record, obtain evidence from a vocational expert to

15   clarify the effect of the assessed limitations on the claimant's occupational base.  AR 229.  At

16   plaintiff's hearing before the ALJ, she orally agreed to change her alleged onset date of disability

17   to March 1, 2008.  AR 82.  Upon reconsideration, ALJ Peter F. Belli again found plaintiff not

18   disabled.  AR 39.

19          The ALJ made the following findings (citations to 20 C.F.R. omitted):

20                  1.  The claimant meets the insured status requirements of the Social
                    Security Act through March 31, 2009.

21

22                  2.  The claimant has not engaged in substantial gainful activity
                    since June 28, 2007, [sic] the alleged onset date.

23                  3.   The claimant has the following severe impairments:
                    fibromyalgia; diabetes mellitus; chronic headaches; degenerative

24                  disc disease and degenerative disc disease of the cervical and
                    lumbar spine; carpal tunnel syndrome in both arms/hands/wrists;

25                  chronic post-traumatic stress syndrome and bipolar disorder or
                    major depressive disorder, recurrent.

26

27                  4.  The claimant does not have an impairment or combination of
                    impairments that meets or medically equals the severity of one of
                    the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

28                  1.

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) in that she can lift and carry 10 pounds frequently and 20 pounds occasionally; can sit for eight hours with normal breaks; can stand and walk six hours of an eight hour day with normal breaks. However, she can only frequently extend and flex her wrist; can frequently perform fine and gross manipulation; can only occasionally stoop, kneel, crouch, crawl; cannot climb ladders, ropes and scaffolds. She had no limitations on the ability to receive, understand, remember and carry out simple job instructions; she is limited to frequent ability to understand, remember and carry out detailed job instructions; she faces no limits in the ability to make workplace judgments; she is limited to frequent interactions with supervisors, co-workers and the public.

6.   The claimant is not [sic] capable of performing past relevant work as a palletizer as it requires the performance of work related activities precluded by the claimant's residual functional capacity.[1]

7.   The claimant has not been under a disability, as defined in the Social Security Act, from June 28, 2007, [sic] through the date of this decision.

AR 15–39.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but it denied review on April 3, 2013, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1–3.

FACTUAL BACKGROUND

Born on November 4, 1963, plaintiff was 44 years old on the alleged onset date of disability and 48 years old at the time of the administrative hearing.  AR 38, 15, 39.  Plaintiff has not engaged in substantial gainful activity since 2002, when she worked as a palletizer/operator for an olive company.  AR 37.

LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

---

[1] The ALJ's discussion of this finding contradicts his initial (mis)statement.  He states, "In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually performed by her."  AR 38.

3

1   Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel,

2   180 F.3d 1094, 1097 (9th Cir. 1999).

3          The findings of the Commissioner as to any fact, if supported by substantial evidence, are

4   conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

5   more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th

6   Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a

7   conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

8   N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute

9   substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v.

10  Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

11         Although this court cannot substitute its discretion for that of the Commissioner, the court

12  nonetheless must review the record as a whole, "weighing both the evidence that supports and the

13  evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec' y of Health and

14  Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th

15  Cir. 1985).

16         "The ALJ is responsible for determining credibility, resolving conflicts in medical

17  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

18  (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

19  one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v.

20  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons

21  stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which he did not

22  rely."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d

23  871, 874 (9th Cir. 2003).

24         The Court will not reverse the Commissioner's decision if it is based on harmless error,

25  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

26  ultimate nondisability determination.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

27  2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

28  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

1

ANALYSIS

2        Plaintiff seeks summary judgment on the grounds that (1) the ALJ failed to properly

3 resolve conflicts between the opinions of plaintiff's treating physician and social security

4 consultants; (2) the ALJ erred by failing to set forth clear and convincing reasons for discrediting

5 plaintiff's allegations of subjective complaints and limitations; (3) substantial evidence does not

6 support the ALJ's findings that plaintiff has the residual functional capacity to perform light work

7 and her past relevant work as a palletizer; and (4) the vocational expert's testimony does not

8 constitute substantial evidence supporting the ALJ's findings that plaintiff has the residual

9 functional capacity to perform her past relevant work and other light work in the national

10 economy.  The Commissioner, in turn, argues that the ALJ's decision is supported by substantial

11 evidence and is free from legal error.  Further, the Commissioner seeks summary judgment on the

12 grounds that (1) the ALJ properly evaluated the medical evidence in making his residual

13 functional capacity findings; (2) substantial evidence supports the ALJ's adverse credibility

14 findings; (3) the ALJ reasonably concluded that plaintiff could perform her past relevant work as

15 a palletizer based on her own description of the job duties; and (4) the ALJ reasonably relied on

16 the vocational expert to conclude that plaintiff could still perform other work within the national

17 economy.

18 A.     Opinion Evidence

19        As a treating physician, the opinion of primary care physician Donna Holscher, M.D.

20 would ordinarily be accorded controlling weight.  However, the ALJ refused to grant her opinion

21 such weight and instead favored the opinions of David Richwerger, Ed.D., an examining

22 psychologist who interviewed plaintiff in November 2007.  AR 24–26, 31–35.  While the ALJ

23 asserted reasons for according "good" weight, instead of "substantial" or "great" weight to the

24 opinion of Dr. Holscher, the Court finds that the ALJ erred for the reasons discussed below.

25      1.     Legal Standards

26        In the Ninth Circuit, courts "distinguish among the opinions of three types of physicians:

27 (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the

28 claimant (examining physicians); and (3) those who neither examine nor treat the claimant

1    (nonexamining physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more

2    weight should be given to a treating physician's opinion than to those who do not treat the

3    claimant.  Id.  A treating physician's opinion that is given controlling weight "must be adopted."

4    See Social Security Ruling ("SSR") 99–2p ("Giving Controlling Weight to Treating Source

5    Medical Opinions," at ¶ 6).[2]  To accord a treating physician's opinion controlling weight, the

6    opinion must be (1) "well-supported by medically acceptable clinical and laboratory diagnostic

7    techniques"; and (2) "'not inconsistent' with the other substantial evidence in the case record."

8    See Orn, 495 F.3d at 631.  "Not inconsistent" means that "no other substantial evidence in the

9    case record . . . contradicts or conflicts with the opinion"; "substantial evidence" means "more

10   than a mere scintilla" such that a "reasonable mind would accept as adequate to support a

11   conclusion."  SSR 96–7p (Explanation of Terms).

12          "If a treating doctor's opinion is not contradicted by another doctor (i.e., there are no other

13   opinions from examining or nonexamining sources), it may be rejected only for 'clear and

14   convincing' reasons supported by substantial evidence in the record."  See Ryan v. Comm'r of

15   Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008); Lester, 81 F.3d at 830.  "If the ALJ

16   rejects a treating or examining physician's opinion that is contradicted by another doctor, he must

17   provide specific, legitimate reasons based on substantial evidence in the record."  Valentine v.

18   Comm'r of Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); Ryan, 528 F.3d at 1198.[3]  "The

19   ALJ can meet this burden by setting out a detailed and thorough summary of the facts and

20   conflicting clinical evidence, stating his interpretation thereof, and making findings."  Magallanes

21   v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  Furthermore, "[w]hen an examining physician

22   relies on the same clinical findings as a treating physician, but differs only in his or her

23   conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  Orn, 495

24   _____

25   [2] "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless."  Bray v.
     Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009).  The Ninth Circuit gives them

26   deference so long as they do not produce "a result inconsistent with the statute and regulations."
     Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).

27   [3] As to the appropriate standard to apply in this case, the Commissioner appears to argue that the
     treating physicians' opinions are contradicted by the examining physicians' opinion.  The Court

28   will therefore apply the "specific and legitimate" standard in this case.  AR 30–31.

1  F.3d at 632.

2       Treating physicians' subjective judgments are important, and "properly play a part in their

3  medical evaluations." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). "The ALJ must

4  explain his own interpretations, and cannot merely list contrary opinions when stating that a

5  treating physician's opinion is unsupported." Boardman v. Astrue, 286 F. App'x 397, 399–400

6  (9th Cir. 2008) (citing Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294 (9th Cir.

7  1999)). If the ALJ fails to provide adequate reasons for rejecting a treating or examining

8  physician's opinion, the Ninth Circuit credits the opinion as a matter of law. Benecke v.

9  Barnhart, 379 F.3d 587, 594 (9th Cir. 2004).

10       "If there is substantial evidence in the record contradicting the opinion of the treating

11  physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" Orn

12  v. Astrue, 495 F.3d 625, 632-33 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(c)(2)). However,

13  the ALJ must still consider the factors listed in § 404.1527(c)(2)-(6) in determining what weight

14  to accord the opinion of a treating physician. "Even when contradicted by an opinion of an

15  examining physician that constitutes substantial evidence, the treating physician's opinion is 'still

16  entitled to deference.'" Id. (citing S.S.R. 96–2p at 4, 61 Fed.Reg. at 34,491). "In many cases, a

17  treating source's medical opinion will be entitled to the greatest weight and should be adopted,

18  even if it does not meet the test for controlling weight." S.S.R. 96–2p at 4, 61 Fed.Reg. at 34,491.

19       2.      Donna Holscher, M.D., Treating Physician

20            a.   Relevant Background

21       Dr. Holscher began treating plaintiff for her mental impairments as her primary care

22  provider in September 2005. AR 515. In September 2005, Dr. Holscher diagnosed plaintiff with

23  depression and prescribed her Lexapro. AR 515. In August 2006, Dr. Holscher prescribed

24  Topamax in an attempt to get plaintiff's depression "under control." AR 509. Later in that same

25  month, seeing no improvement, Dr. Holscher prescribed plaintiff Cymbalta as well. AR 507. By

26  February 2007, Dr. Holscher had diagnosed plaintiff with a mood disorder, discontinued her

27  prescription of Topamax, which caused her agitation, and replaced it with a prescription for

28  Depakote. AR 485. In March 2007, plaintiff was first diagnosed with probable bipolar disorder

1    and moderate depression.  AR 486.  In September 2007, plaintiff was also diagnosed with anxiety

2    disorder caused by her general medical condition.  AR 490.

3         In treatment notes from March 2007, Dr. Holscher opines that from the combination of

4    lower back pain and bipolar disorder plaintiff is unable to work five days a week, eight hours a

5    day in sustained employment.  AR 505.  According to Dr. Holscher plaintiff can occasionally lift

6    10 pounds and frequently lift less than 10 pounds; stand/walk with normal breaks for less than 2

7    hours in an 8 hour workday; must alternate when sitting continuously; and has limited pushing

8    and pulling abilities in both her upper and lower extremities.  Id.

9         In May 2007, Dr. Holscher opined that due to plaintiff's bipolar disorder, panic attacks,

10   and a history of child and spousal abuse, she had a Global Assessment of Functioning ("GAF")

11   score of 45.  AR 494–98.  Dr. Holscher noted that plaintiff had poor memory, weight gain, sleep

12   disturbance, personality changes, mood disturbance, suicidal ideas, manic syndrome, and a

13   number of other symptoms.  Id.  Further, Dr. Holscher opined that because of her chronic lower

14   back pain she was unable to stoop, bend, or reach; could stand for no more than 30 minutes at a

15   time; could carry 20 pounds for 5 minutes; and sit for 30 minutes before she needed to change

16   position.  AR 496.

17        Dr. Holscher referred plaintiff to Tehama County Health Services Agency for an

18   assessment in November 2007.  AR 559–61.  During her assessment by Ed Thacker, LMFT,

19   plaintiff indicated that she grew up in an abusive home and had survived an abusive marriage.

20   AR 559.  Although her childhood trauma had been disturbing her for many years, plaintiff

21   reported that since her workplace injury in 2003 she lost her temper easily and "did not trust

22   herself to go out in public for fear of losing control."  Id.  At this time Dr. Thacker diagnosed

23   plaintiff with chronic post-traumatic stress disorder (PTSD) and moderate, mixed bipolar 1

24   disorder.  AR 560.  Plaintiff continued to see Dr. Thacker at least until April 2008.  AR 566.

25   During this time she also regularly saw Dr. Holscher.  AR 594–618.

26        In August 2008, Dr. Holscher diagnosed plaintiff as "bipolar affective disorder, depressed,

27   in remission" for the first time, and recommended that she continue her prescription of Lexapro

28   and Topamax while decreasing her prescription of Geodon.  AR 680–81.  Dr. Holscher continued

8

1   this diagnosis with slightly varying prescriptions until at least December 2009.  AR 756–57.  In

2   October 2008, a Tehama County Clinical Assessment diagnosed plaintiff with a mood disorder

3   and PTSD with a GAF score of 55.  AR 695.  Notes from a Tehama County Health Services

4   psychiatrist in September 2009 indicate that plaintiff was still being treated for mixed bipolar

5   disorder at that time.  AR 784.

6          In August 2010, Dr. Holscher again diagnosed plaintiff with "bipolar affective disorder,

7   depressed, in remission" and prescribed her Lunesta, Topamax, and Cymbalta.  AR 838–39.  This

8   diagnosis continued until at least January 2011.  AR 819.  In August 2011 plaintiff again received

9   treatment from Tehama County Health Services and was diagnosed with recurrent, major

10   depression and chronic PTSD with a GAF of 54 to 55.  AR 852, 857.  During treatment plaintiff

11   was often described as well oriented, alert, cooperative, and calm.  AR 858, 860.  Plaintiff

12   continued seeing a therapist monthly through March 2012, when she was diagnosed as having

13   PTSD and/or recurrent major depressive disorder.  AR 904–23.

14                    b.   Analysis

15          The ALJ decided to afford Dr. Holscher's March 2007 opinion on plaintiff's mental

16   impairments no weight as follows:

17                      . . . . The determination of disability is an issue reserved to the
                     Commissioner and hence this finding of disability by a treating
18                      source cannot be given weight or special significant pursuant to
                     SSR 96-5p for to do so would confer on an outside source the
19                      authority to make this determination which it is the Commissioner's
                     statutory responsibility to perform. To the degree however this is
20                      not a simple determination of disability, but rather an opinion of
                     limitations on physical functioning, the undersigned finds this
21                      record does not sustain such a finding based on her mental
                     impairments, which are managed with medications, regularly
22                      addressed as irritability and anger, to some degree lifelong
                     conditions as reported by the claimant, which impact, but do not
23                      prevent her capacities mentally to engage in the activities of daily
                     living as well as mother her children. And by paid by IHSS as a
24                      mentally safe and healthy care provider for her special needs child.

25   AR 31.

26          The ALJ's reasoning for affording Dr. Holscher's May 2007 opinion on plaintiff's mental

27   impairments with "good" and not "substantial" or "great" weight was substantially similar:

28
                                              9

1

2

3

4

5

6

7

> . . . . Again, good weight is accorded the opinion of the claimant's treating source but not great, for this record does not sustain such a finding based on her mental impairments. Objective findings in treatment records consistently show the claimant in no acute distress, adequate grooming, eye contact normal, mood pleasant; while the claimant reports more significant symptoms the record shows that with medication management, her symptoms fluctuate, and are much improved with regular exercise, seeing psychiatrist regularly. And as noted, notes in treatment records show the claimant able to continue care for her home and family, and is sufficiently sound to be paid as an in home care attendant by IHSS for her special needs child.

8

AR 31.

9

10

11

12

13

14

15

16

17

First, although the ALJ has the authority to make the ultimate determination regarding disability, a treating physician's opinion regarding the disability status of a claimant is entitled to substantial weight. Embrey, 849 F.2d at 422.  Although the ALJ "' is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, . . . he cannot reject them without presenting clear and convincing reasons for doing so.'" Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (quoting Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984) (per curiam)).  Accordingly, the ALJ erred in determining that he could ignore the treating physician's opinion simply because it related to the ultimate issue of disability.

18

19

20

21

22

23

24

25

26

27

28

The ALJ's assertion that Dr. Holscher's opinion should not be afforded controlling weight because plaintiff's symptoms are managed with medication is not supported by substantial evidence.  In determining whether a claimant is disabled, the Commissioner must evaluate the claimant's "ability to work on a sustained basis."  20 C.F.R. § 404.1512(a).  "Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability."  Lester, 81 F.3d at 833.  Further, if the ALJ decides not to afford the treating physician's opinion controlling weight he must "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof, and mak[e] findings."  Magallanes, 881 F.2d at 751 (internal quotation marks and citation omitted).  The ALJ does not explain what clinical evidence he is relying on to determine that plaintiff's mental impairments are manageable with medication.  Furthermore, although there is some evidence in the record that

10

1    plaintiff has had symptom-free periods, that evidence does not undermine Dr. Holscher's opinion.

2    For example, the ALJ notes that plaintiff is regularly considered not to be in acute distress, with

3    adequate grooming, normal eye contact, and in a pleasant mood during her consultations with

4    physicians and therapists.  AR 30.  However, the fact that plaintiff has occasional symptom-free

5    periods is not substantial evidence supporting the ALJ's refusal to give Dr. Holscher's opinion

6    controlling weight.  Accordingly, the ALJ erred in determining that Dr. Holscher's opinion

7    should not be afforded controlling weight because plaintiff's mental impairments can be

8    controlled with medication.

9           The ALJ also asserts that Dr. Holscher's medical opinion is undermined by plaintiff's

10   daily activities and ability to be compensated for the care of her downs syndrome child.

11   However, the fact that plaintiff is able to care for her children does not contradict Dr. Holscher's

12   opinion.  In determining a claimant's residual functional capacity, the ALJ may consider any of

13   the claimant's daily activities that "may be seen as inconsistent with the presence of a condition

14   which would preclude all work activity."  Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990).

15   The ALJ may also take into consideration any of claimant's daily activities that "involve[e] the

16   performance of physical functions that are transferable to a work setting."  Orn, 495 F.3d at 639

17   (citation omitted).  However, a claimant should not be "penalized for attempting to lead [a]

18   normal [life] in the face of [her] limitations."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.

19   1989).  Furthermore, "many home activities are not easily transferable to what may be the more

20   grueling environment of the workplace, where it might be impossible to periodically rest or take

21   medication."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  Plaintiff reported being able to

22   do light housework and care for her Down Syndrome child, often with the help of her eldest son.

23   AR 23.  Contrary to the ALJ's assertions, such everyday activities are not necessarily at odds with

24   Dr. Holscher's assessment of plaintiff's mental impairments.  AR 505.  Thus, the ALJ erred in

25   concluding that plaintiff's reported daily activities contradicted the treating physician's medical

26   opinion.

27          For all these reasons, the Court finds that the ALJ has failed to provide specific, legitimate

28   reasons supported by substantial evidence for discounting Dr. Holscher's opinion regarding

1  plaintiff's mental impairment.  In light of this error, the Court declines to reach plaintiff's

2  arguments regarding the ALJ's residual functional capacity determination and the testimony of

3  the vocational expert.  The Court also declines to consider plaintiff's additional argument that the

4  ALJ erred by finding plaintiff's testimony to be less than credible.  However, the ALJ should

5  assess plaintiff's credibility on remand in accordance with the Ninth Circuit's test as described in

6  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  Further, the ALJ is instructed to

7  assess the treating physician's opinion in accordance with the factors stated in 20 C.F.R. §

8  404.1527(c)(2)–(6).  Because the ALJ's disability determination is not supported by substantial

9  evidence, it is erroneous.

10  D.     Remand

11       Plaintiff requests that the decision of the ALJ be vacated and his case be remanded for a

12  new hearing.  The decision whether to remand for further proceedings turns upon the likely utility

13  of such proceedings.  Barman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000).  In this matter, this

14  Court concludes that outstanding issues remain that must be resolved before a determination of

15  disability can be made.  Pursuant to this remand, the ALJ shall properly consider the opinions of

16  plaintiff's treating physician and re-evaluate plaintiff's residual functional capacity and disability

17  determination accordingly.  Because remand is appropriate on these grounds, the Court declines

18  to consider plaintiff's additional argument that the ALJ erred by finding plaintiff's testimony to

19  be less than credible.

20       Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

21       1.     Plaintiff's motion for summary judgment (ECF No. 16) is granted in part;

22       2.     The Commissioner's cross-motion for summary judgment (ECF No. 23) is denied;

23  and

24       3.     This matter is remanded for further proceedings consistent with this order.

25  DATED: September 12, 2014

26

27  ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

28